WEIS–FRICKER EXPORT AND IM-
PORT CORPORATION, a corpo-
ration, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, Defendant.

Civ. A. No. 395.

United States District Court
N. D. Florida, Pensacola Division.

July 13, 1956.

———◆———

A. Hepner of Fisher & Hepner, Pen-
sacola, Fla., for plaintiff.

Bert Lane (of Yonge, Beggs & Lane),
Pensacola, Fla., for defendant.

DE VANE, Chief Judge.

This is a suit upon a fidelity bond.
The question before the Court is wheth-
er plaintiff sustained pecuniary loss of
money or other personal property through
fraud, dishonesty, forgery, theft, em-
bezzlement, wrongful abstraction or wil-
ful misapplication of money or property
of plaintiff, committed directly or in con-

nivance with others by its employee, E. W. Santman, during the period beginning September 27, 1948, and ending March 19, 1949, and whether plaintiff's proof is sufficient to sustain recovery therefor under the fidelity bond. The items making up the claims may be summarized as follows:

| | | |
|---|---|---|
| 1. | Expenditures made from plaintiff's funds for the personal living and household expenses of Santman and his wife, all of which were charged to the expense account of corporations owned and controlled by plaintiff | $1,904.02 |
| 2. | Cash advances made to Santman from January 10 to 29, 1949, for traveling expenses | 1,802.40 |
| 3. | Expenditures made by Santman and his wife for taxi fares, liquor purchases, telegrams, etc., which were all charged to the corporation | 174.82 |
| 4. | Cash given to E. W. Santman in Belize, British Honduras, on or about December 15, 1948, by Tina Hofius to be credited to her account in a bank in the United States by the corporation | 400.00. |

The Court has carefully considered all of plaintiff's evidence submitted in support of these claims and plaintiff's brief relating thereto and is of the opinion that the evidence is insufficient to sustain a recovery in this case on any of the items. The reasons for the Court's conclusions are briefly stated below.

■ As to Item 1, the evidence shows that Santman was employed by plaintiff on September 27, 1948, at Pensacola, Florida. He was employed as manager of plaintiff's business in the tropics; he was to live in Central America; and he was given a general power of attorney to represent plaintiff's interests in the tropics. He had complete control of plaintiff's interests in the tropics, including the drawing of drafts, payment and receipt of funds, and general supervision, including the right to fire and hire personnel. At the time Santman was employed, plaintiff was engaged in moving its operations from Belize, British Honduras, to the Republic of Nicaragua. Santman was required at the beginning of his employment to live in a company owned house in Belize, British Honduras, which contained several bedrooms and four servants. The principal use of the house was to provide living quarters for plaintiff's friends, customers and top employees when they were in Belize. Santman and his wife lived in this house and Mrs. Santman managed it without any additional compensation, according to the records in the case. Everything purchased for the house including groceries was charged to one of the corporations owned by plaintiff. Every charge was openly made and no effort by Santman to conceal what he and his wife were actually doing is shown in the record. There is a dispute between Santman and plaintiff as to whether plaintiff was to provide Santman with a place to live and maintenance for himself and wife. Santman insists that was a part of the agreement of employment. Plaintiff denied it. This issue is of the nature that can not be tried in a suit on a fidelity bond.

■ Item 2 represents a series of advances made to Santman by corporations owned by plaintiff during the time Santman was most actively engaged in transferring all the holdings of plaintiff from British Honduras to Nicaragua. Plaintiff's holdings so transferred consisted of considerably more than a million dollars in value. Santman claims that the advances made to him were for the purpose of expediting the movement of this property out of British Honduras and used by him, adopting his own expression, "to grease the palms" of representatives of the British Honduras government assisting him in expediting the movement of this property. Santman testified that these expenditures were charged by him

as travel expenses against himself at the direction of an officer of plaintiff. The officer named by Santman denies Santman's testimony on that account, so again we have controverted claims for which recovery can not be had in this case.

Item 3, though small, indicates the meticulous work done by plaintiff's accountants in ferreting out every charge that could be made against Santman. Santman admits the expenditure of money for taxi fares and for telegrams. The charges were openly made and he testified that it was in connection with plaintiff's business. Santman also admits the expenditures of money for meals, for liquor and other entertainment for customers and business associates of plaintiff and these charges were openly made. Whether Santman had the right to make them can not be determined in this suit.

The fourth item represents money turned over to Santman by Tina Hofius of Belize, British Honduras, to be credited to her account in a specified bank in Pensacola, Florida. Santman testified that he delivered the money to the company's cashier to be deposited in the company's accounts and on the same day he wrote a letter to plaintiff informing plaintiff that he had accepted the money and deposited it with the company and directing the plaintiff how to handle the account. Santman's copy of this letter, so he testified, disappeared from his files and plaintiff, on demand of counsel for defendant, produced a copy of the letter, which established without doubt that the letter was written and forwarded by Santman at the time he tesified it was written and forwarded. The young lady that Santman testified received the money for deposit denies any recollection of the transaction. That is the strongest proof plaintiff made with reference to this item. Under these circumstances, it likewise represents an item which can not be litigated in this case.

Prior to the institution of this suit, plaintiff instituted a discovery action of some nature against Santman in one of the courts in Nicaragua, in which Santman was directed to answer numerous interrogatories with reference to all the foregoing items. Santman did not appear in the case and a default judgment was taken against him. The effect of the judgment on default bears a strong resemblance to unanswered Request for Admissions as authorized under Rule 36(a) of our Rules of Civil Procedure, 28 U.S.C.A. At any rate whatever effect the interrogatories may have in Nicaragua courts, they are certainly of no value in litigation such as this. See Rule 36 (b).

A judgment will be entered for defendant in conformity with this Memorandum-Decision.