**FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.**

[124 N.C. App. 232 (1996)]

FIELDCREST CANNON, INC., Plaintiff v. FIREMAN'S FUND INSURANCE COMPANY; THE NORTH RIVER INSURANCE COMPANY; and NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Defendants

No. COA95-721

(Filed 5 November 1996)

**1. Discovery and Depositions § 53 (NCI4th); Trial § 222 (NCI4th)— deemed admissions—effect of voluntary dismissal**

The trial court did not err in an action arising from an insurance company's failure to defend employment discrimination claims by not granting summary judgment for defendant based on admissions which had been deemed admitted due to nonresponse to a request for admissions in a prior action which was voluntarily dismissed where the voluntary dismissal was in part to avoid the effect of the deemed admissions. N.C.G.S. § 1A-1, Rule 36 clearly provides that admissions made in one action may not be raised against the party who made them in any other proceeding.

**Am Jur 2d, Dismissal, Discontinuance and Nonsuit § 72; Evidence § 773.**

**Effect of nonsuit, dismissal, or discontinuance of action on previous orders. 11 ALR2d 1407.**

**2. Trial § 222 (NCI4th)— voluntary dismissal—claim preserved—proceeding not preserved**

Admissions obtained under N.C.G.S. § 1A-1, Rule 36 may not be utilized beyond the confines of the pending action; while an original claim may be preserved when a dismissal under N.C.G.S. § 1A-1, Rule 41 is taken, the proceeding is not.

**Am Jur 2d, Dismissal, Discontinuance and Nonsuit § 72.**

**3. Insurance § 120 (NCI4th)— employment claims—duty to defend—construction of policy—personal injury—bodily injury**

The trial court erred in an action to determine insurance coverage by denying defendant Fireman's Fund's motion for summary judgment on all but one claim in an action involving employment related claims. Defendant Fireman Fund's policies indemnified and required defendant to defend damages because of personal or bodily injury. Personal injury was defined in two

FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.

[124 N.C. App. 232 (1996)]

sections of the policies; since the definition under the applicable section explicitly failed to include discrimination as a "personal injury," and none of the underlying claims state a claim within the definition for "personal injury" found in that particular section, no claim for personal injury in any of the underlying actions exists for coverage within that section of defendant Fireman Funds's policies. As for bodily injury, an exclusion prohibits liability for bodily injuries arising out of and in the course of employment and the trial court erroneously found that defendant Fireman's Fund's policies provided coverage for all but one claimant, Rosenthal. The Rosenthal suit does not arise out of and in the course of his employment with plaintiff and, while his complaint fails to make out a claim for intentional infliction of emotional distress, there is a genuine issue as to whether plaintiff negligently caused Rosenthal to suffer severe emotional distress.

**Am Jur 2d, Insurance § 1412.**

**Refusal of liability insurer to defend action against insured involving both claims within coverage of policy and claims not covered. 41 ALR2d 434.**

**Allegations in third person's action against insured as determining liability insurer's duty to defend. 50 ALR2d 458.**

Appeal by defendant Fireman's Fund Insurance Company from order entered 26 April 1993 by Judge Forrest A. Ferrell, and judgment entered 7 December 1994 by Judge John M. Gardner in Mecklenburg County Superior Court. Cross-appeal by plaintiff from orders entered 26 April and 30 June 1993 by Judge Ferrell in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 March 1996.

*Blair Conaway Bograd & Martin, P.A., by Bentford E. Martin, for plaintiff-appellee.*

*Baucom, Claytor, Benton, Morgan, Wood & White, P.A., by James F. Wood, III; and Patterson, Dilthey, Clay & Bryson, L.L.P., by Ronald C. Dilthey and G. Lawrence Reeves, for defendant-appellant Fireman's Fund Insurance Company.*

*Wilson & McIlvaine, by Dwight B. Palmer, Jr.; and Robinson, Bradshaw & Hinson, P.A., by Mark W. Merritt and Edward F. Hennessey, IV, for defendant-appellee North River Insurance Company.*

*Moore & Van Allen, PLLC, by Christopher J. Blake and Joseph W. Eason, for defendant-appellee North Carolina Insurance Guaranty Association.*

JOHNSON, Judge.

Plaintiff Fieldcrest Cannon, Inc. brought this action to recover legal defense costs incurred in defending its predecessor, Cannon Mills, Inc. (hereinafter "Cannon"), against certain employment discrimination claims during the 1980s, and to recover sums paid pursuant to judgments and settlements of certain of those claims. Cannon had been insured by defendant Fireman's Fund Insurance Company (hereinafter "Fireman's Fund") under four (4) consecutive comprehensive general liability policies written as primary insurance and covering occurrences during a period from 15 May 1978 through and including 15 May 1982. All of defendant Fireman's Fund's policies are identical in form and contain the same language and coverages.

Defendant North River Insurance Company (hereinafter "North River") and Mission Insurance Company (hereinafter "Mission") insured Cannon pursuant to "umbrella" liability policies which were written in excess of defendant Fireman's Fund's primary insurance. Defendant North River's policy covered occurrences during a period from 15 May 1977 through 15 May 1980, and the Mission policy covered occurrences during the period of 15 May 1980 through 15 May 1981. Mission became insolvent in 1987, and defendant North Carolina Insurance Guaranty Association (hereinafter "Guaranty") assumed responsibility for certain of Mission's obligations, as provided and limited by the North Carolina Insurance Guaranty Association Act, N.C. Gen. Stat. § 58-48-1, *et seq.*

Plaintiff purchased the above-mentioned insurance policies through an insurance broker, Johnson & Higgins Carolinas, Inc. (hereinafter "Johnson & Higgins"). At all times relevant to this action, Johnson & Higgins also acted as agent for defendant Fireman's Fund pursuant to a written agency agreement. Johnson & Higgins' role as Cannon's insurance broker terminated in 1982.

There are six (6) underlying claims of employment discrimination at issue in this action:

1. Stanley Rosenthal filed a lawsuit against Cannon in the state courts of New York on 6 January 1982, alleging wrongful ter-

mination of employment, individual and systemic age discrimination, individual and systemic religious discrimination, negligent and intentional infliction of emotional distress, mental and emotional pain and suffering resulting in a decreased life expectancy, and damage to reputation. (hereinafter "*Rosenthal* suit").

2. Patricia Price filed three (3) EEOC complaints against Cannon in 1981, alleging individual and systemic sex discrimination, harassment and defamation. (hereinafter "Price EEOC complaint").

3. Nine (9) female employees of Cannon filed EEOC complaints from December 1980 through May 1981 alleging sex discrimination. These complaints were subsequently consolidated for investigation by the EEOC as a potential class action involving sex discrimination in 1981. (hereinafter "EEOC sex class investigation").

4. Nell Wilson filed an EEOC complaint against Cannon on 15 May 1980, amended on 20 August 1980, and a related lawsuit before the United States District Court, District of South Carolina, on 27 May 1981, alleging sex and age discrimination. (hereinafter "*Wilson* suit").

5. Patricia Price filed a lawsuit against Cannon before the United States District Court, Middle District of North Carolina, on 11 May 1982, alleging sex and age discrimination. (hereinafter "*Price* suit").

6. On 18 October 1984, Patricia Price, Nancy Lytton and Agatha Overcash filed a lawsuit against Cannon, including a motion for class certification, before the United States District Court, Middle District of North Carolina, based upon their EEOC complaints, alleging sex discrimination and claims of defamation by Price. (hereinafter "*Overcash*/class action").

In regards to the *Rosenthal* suit, Cannon provided Johnson & Higgins, as defendant Fireman's Fund's agent, with timely written notice of the pending action by letter dated 25 January 1982. By letter dated 12 February 1982, Johnson & Higgins notified defendant Fireman's Fund of the *Rosenthal* suit and defendant Fireman's Fund denied coverage of the claims asserted by Mr. Rosenthal and refused to defend Cannon by letter dated 18 February 1982. Defendant Fireman's Fund's letter of denial characterized the claims in Mr.

Rosenthal's complaint simply as discrimination claims, uncovered by plaintiff's policy.

After defendant Fireman's Fund refused to defend Cannon against the *Rosenthal* suit, Johnson & Higgins reported that suit to Mission, through Mission's general agent, Sayre & Toso, Inc. Johnson & Higgins advised Mission's agent that the primary insurer, defendant Fireman's Fund, had denied coverage and requested that Mission accept Cannon's defense under its umbrella policy. Subsequently, Mission agreed to defend Cannon against the *Rosenthal* suit by reimbursing its defense costs. Thereafter, Mission did reimburse Cannon's defense cost in the *Rosenthal* suit from the beginning of the case through February 1993, in the total of $7,245.72.

In early 1982, one of Cannon's in-house attorneys, Susan Hartzoge Gray, received a copy of a letter from Johnson & Higgins to Cannon's insurance manager, Joe Lambert, regarding the status of Mission's reimbursement of Cannon's defense costs in the *Rosenthal* suit. Upon receiving this letter, Ms. Gray reported the pending claims (the Price EEOC complaint, the EEOC sex class investigation, the *Price* suit and the *Wilson* suit) to Mr. Lambert, Cannon's insurance manager, who immediately reported the claims to Johnson & Higgins.

In February or March 1984, Gray, Lambert and Wayne Johnson, Johnson & Higgins' claims manager, met to discuss defendant Fireman's Fund's refusal to cover the *Rosenthal* suit, and the possibility of insurance coverage for the additional pending claims—the Price EEOC complaint, the EEOC sex class investigation, the *Price* suit and the *Wilson* suit. Because of Johnson's belief that defendant Fireman's Fund's policies would not cover the additional pending claims and that defendant Fireman's Fund would refuse to defend Cannon with respect to those claims—as they had with the *Rosenthal* suit—but that Mission or defendant North River might accept the defense, it was decided to report the additional claims directly to Mission and defendant North River, the umbrella carriers, rather than to defendant Fireman's Fund. In fact, evidence tended to show and the trial court found as fact that defendant "Fireman's Fund did not receive actual notice of the *Price* and *Wilson* lawsuits or the EEOC Class Investigation until the plaintiff filed this action." Later, after receiving notice of the additional pending claims against Cannon, the umbrella carriers acknowledged notice of the additional claims and corresponded with Johnson & Higgins seeking additional information about those claims.

FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.

[124 N.C. App. 232 (1996)]

By letter dated 5 February 1985, Cannon notified Johnson & Higgins of the *Overcash*/class action, which was filed in October 1984. Johnson & Higgins subsequently reported this lawsuit, by letter dated 14 February 1985, to defendant North River and Mission, requesting that they provide Cannon with a defense. By letter dated 22 October 1985, Mission's agent, Sayer & Toso, requested coverage determination from defendant Fireman's Fund as to the *Overcash*/class action. Thereafter, on 22 November 1985, Johnson & Higgins sent defendant Fireman's Fund notice of the *Overcash*/class action. By letter dated 4 December 1985, defendant Fireman's Fund notified Cannon's insurance manager, Joe Lambert, that defendant Fireman's Fund's insurance policies did not provide coverage for the *Overcash*/class action.

Following defendant Fireman's Fund refusal to defend Cannon in the *Overcash*/class action, Johnson & Higgins continued to correspond with the agents of the umbrella carriers about that case and the other additional employment discrimination claims throughout 1986 and early 1987. In 1986, agents for both umbrella carriers indicated that they would provide a defense to Cannon, or reimburse Cannon's defense costs—as they had agreed in the *Rosenthal* suit—with respect to said claims.

After Mission became insolvent in early 1987, defendant Guaranty began receiving and responding to the communications from Johnson & Higgins regarding the reimbursement of plaintiff's defense costs in the *Rosenthal* suit and the additional underlying claims. By letter dated 19 October 1987, counsel for defendant Guaranty informed plaintiff that defendant Guaranty would not reimburse plaintiff's defense costs in the *Rosenthal* suit or the additional underlying claims, since defendant Guaranty thought that defendant Fireman's Fund's policies covered those claims. Defendant Guaranty also advised plaintiff that it would not consider further reimbursement of plaintiff's defense costs until plaintiff first exhausted all legal remedies against defendant Fireman's Fund.

Consequently, plaintiff contacted defendant Fireman's Fund and notified the company of defendant Guaranty's position, and requested a meeting to discuss coverage issues regarding the underlying discrimination claims. Upon receiving no response from defendant Fireman's Fund, plaintiff filed an action (88CVS14786), on 5 December 1988, against defendant Fireman's Fund and the umbrella carriers for a declaratory judgment, and for reimbursement of its

defense costs, settlement payments and judgments incurred in the underlying claims. Thereafter, on 2 August 1990, plaintiff filed a notice of voluntary dismissal of the December 1988 action pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure.

Plaintiff filed its complaint in the present action on 12 April 1991, within one (1) year of its voluntary dismissal of the December 1988 action, seeking declaratory judgment and compensatory damages for defendants' failure to defend and indemnify Cannon with respect to the six (6), above-listed, underlying employment discrimination complaints and/or lawsuits.

Following discovery, all of the parties filed cross-motions for summary judgment. These motions came on for hearing at the 8 March 1993 civil session of Mecklenburg County Superior Court before Judge Forrest A. Ferrell.

On 26 April 1993, Judge Ferrell entered an order finding (1) that defendant Fireman's Fund's general liability policies afforded plaintiff coverage for the underlying discrimination claims; (2) that defendant North River's umbrella policy afforded plaintiff excess coverage for the underlying discrimination claims; (3) that the issues of statute of limitations, late notice, and damages were to be decided by the jury; (4) that defendants Fireman's Fund and North River's motions for summary judgment were denied; and (5) that defendant Guaranty's motion for summary judgment was granted. Further, on 30 June 1993, Judge Ferrell entered an order, granting defendant North River's motion to dismiss on the grounds that defendant North River, as an excess carrier, could not be liable for the underlying discrimination claims because all of the parties had agreed that the value of the discrimination claims would not exceed the limits of defendant Fireman's Fund's primary insurance.

By orders entered 10 August and 11 August 1993, Judge Robert M. Burroughs referred the issue of plaintiff's damages for reimbursement of defense costs to a referee. The referee filed his report on 18 May 1994 and, over objections of defendant Fireman's Fund, the referee's report was adopted in full by the court, pursuant to an order of Judge Beverly T. Beal. Judge Beal's order found that Cannon had incurred reasonable attorneys' fees and expenses of $223,015.77 prior to 5 December 1985 in defending the underlying discrimination claims, and in the amount of $243,210.29 thereafter.

FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.

[124 N.C. App. 232 (1996)]

The issues of notice, statute of limitations and plaintiff's damages in recovering settlement and judgment payments with respect to the underlying claims were tried before Judge John M. Gardner during the 19 September 1994 civil session of Mecklenburg County Superior Court. Following a non-jury trial, Judge Gardner entered judgment in plaintiff's favor on 7 December 1994, finding defendant Fireman's Fund liable to plaintiff for damages in the principal amount of $526,726.06. Defendant Fireman's Fund appeals from Judge Ferrell's 26 April 1993 order and from Judge Gardner's 7 December 1994 judgment. Plaintiff cross-appeals from Judge Ferrell's 26 April 1993 order, to the extent that it granted summary judgment in favor of defendant Guaranty, and from Judge Ferrell's 30 June 1993 order dismissing defendant North River from this action.

I.

[1] Defendant Fireman's Fund assigns as error the trial court's grant of plaintiff's motion for summary judgment and denial of its motion for summary judgment. Specifically, defendant Fireman's Fund argues that its request for admissions, served upon plaintiff in the earlier action filed by plaintiff against defendants (88CVS14876), were deemed admitted in regards to both the later and instant action, upon plaintiff's failure to respond to those requests; and thus, there were no material issues of fact and it was entitled to summary judgment as a matter of law. We find this argument to be unpersuasive.

Summary judgment is a mechanism designed to eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed. *Hall v. Post*, 85 N.C. App. 610, 355 S.E.2d 819 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988). On appeal, a trial court's grant of summary judgment is fully reviewable. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 343 S.E.2d 188, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). Appellate review of a trial court's grant of summary judgment addresses the trial court's conclusions as to whether, viewing the evidence in the light most favorable to the non-moving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law. *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987) (citing N.C.R. Civ. P. 56(c); *Vassey v. Burch*, 301 N.C. 68, 269 S.E.2d 137 (1980)). If the appellate court determines that the trial court's conclusions as to these two questions of law were correct, then summary judgment was properly granted. *Id.*

**FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.**

[124 N.C. App. 232 (1996)]

Rule 36 of the North Carolina Rules of Civil Procedure provides in pertinent part:

(a) *Request for Admission.*—A party may serve upon any other party a written request for the admission, *for purposes of the pending action only,* of the truth of any matters within the scope of Rule 26(b). . . . The matter is admitted unless, within 30 days after service of the request, or within shorter or longer time as the court may allow . . . .

(b) *Effect of admission . . . Any admission made by a party under this rule is for the purpose of pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.*

N.C. Gen. Stat. § 1A-1, Rule 36 (1990) (emphasis added). If a party fails to respond to Rule 36 requests for admissions within the thirty (30) day period prescribed by the Rule, the facts in the requests are deemed admitted. *Town of Chapel Hill v. Burchette,* 100 N.C. App. 157, 394 S.E.2d 698 (1990); *Whitley v. Coltrane,* 65 N.C. App. 679, 309 S.E.2d 712 (1983). Further, when facts are admitted pursuant to Rule 36(b), these facts have been held to be sufficient to support a grant of summary judgment. *Rhoads v. Bryant,* 56 N.C. App. 635, 289 S.E.2d 637, *disc. review denied,* 306 N.C. 386, 294 S.E.2d 211 (1982). However, Rule 36(b) is clear in its mandate that admissions made in one action may not be used against the party who made them in any other proceeding outside of the one pending. *See Tidwell v. Booker,* 27 N.C. App. 435, 219 S.E.2d 648 (1975), *rev'd on other grounds,* 290 N.C. 98, 225 S.E.2d 816 (1976) (finding that Rule 36(c) of the North Carolina Rules of Civil Procedure prevented the finding of paternity in a 1963 judgment to be admissible in a 1974 civil action as a judicial admission). *See also Matter of Cassidy,* 892 F.2d 637 (7th Cir.), *cert. denied,* 498 U.S. 812, 112 L. Ed. 2d 24 (1990) (finding that admissions obtained in tax court are not allowed in bankruptcy court under a Tax Court Rule, much like Rule 36(b)); *Seay v. International Association of Machinists,* 360 F. Supp. 123, 124 (C.D. Cal. 1973) (noting the importance of admissions in expediting trials, but also noting the limitation placed upon admissions being utilized in the pending action only under Rule 36 of the Federal Rules of Civil Procedure); *Weis-Fricker Exp. & Imp. Corp. v. Hartford Acc. & I. Co.,* 143 F. Supp. 137 (N.D. Fla. 1956) (finding that admissions in Nicaragua "discovery action" were inadmissible in United States District Court).

**FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.**

[124 N.C. App. 232 (1996)]

In the instant case, plaintiff filed its complaint in 88CVS14786 on 5 December 1988. Defendants served their answer by April 1989, and the parties proceeded to engage in extensive discovery. In fact, on 26 April 1990, defendant Fireman's Fund served plaintiff with a request for admissions, which was never answered nor objected to. Subsequently, on 2 August 1990, plaintiff voluntarily dismissed the action (88CVS14786) pursuant to Rule 41(a)(1) of our Rules of Civil Procedure—admittedly, in great part to avoid the effect of any "deemed" admissions to defendant Fireman's Fund's request for admissions. Thereafter, on 12 April 1991, plaintiff instituted the instant action.

It is true, as defendant Fireman's Fund contends, that Rule 36 serves to reduce the amount of trial time needed to resolve often-times complicated matters. However, we recognize the necessity of construing Rule 36 to comport with the intent of our legislators. Rule 36 of the North Carolina Rules of Civil Procedure, like Federal Rule 36 (as amended in 1970), specifically limits the effect of a deemed admission. Moreover, our legislators, like the drafters of the Federal Rules of Civil Procedure, in promulgating section (b) of Rule 36, were cognizant of the necessity to weigh the equities in allowing deemed admissions which were products of an earlier action to be utilized in a later action. Therein, they recognized the need to sacrifice earlier-obtained, relevant evidence (e.g., deemed admissions) in later litigation, in order to resolve an action on the true merits. Particularly, we find most instructive that our legislators, comparable to the drafters of the Federal Rules, specifically limited the use of Rule 36 admissions to "the pending action only." *See* N.C.G.S. § 1A-1, Rule 36(a),(b).

**[2]** Defendant Fireman's Fund references *Bowlin v. Duke University*, 119 N.C. App. 178, 457 S.E.2d 757, *disc. review denied*, 342 N.C. 190, 463 S.E.2d 233 (1995), in support of its argument. However, we find such reliance to be misplaced. While an original claim may be preserved when a Rule 41 dismissal is taken, the proceeding is not. At the juncture where a party takes a Rule 41 dismissal, that action or proceeding ends. Further, when that party refiles that action within the one (1) year period allowed by Rule 41, another "action" or "proceeding" is begun. Thus, *Bowlin* lends no credence to defendant Fireman's Fund's argument that admissions obtained under Rule 36 may be utilized beyond the confines of "the pending action only." Defendant Fireman's Fund's argument, therefore, fails.

FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.

[124 N.C. App. 232 (1996)]

II.

**[3]** Next, defendant Fireman's Fund argues that the trial court committed error in concluding as a matter of law that it provided insurance coverage for the underlying employment discrimination claims and suits brought against plaintiff. An insurer's duty to defend arises when the claim against the insured sets forth facts representing a risk covered by the terms of the policy. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). The duty to defend is much broader than the duty to indemnify, and may attach even in an action in which no damages are ultimately awarded. *Id.*

Defendant Fireman's Fund's policies indemnified Cannon for "all sums which the insured shall become legally obligated to pay as damages because of personal [or bodily] injury" and required defendant Fireman's Fund to "defend any suit against the insured seeking damages on account of such injury." "Personal injury" is defined in two sections of defendant Fireman's Fund's policies. The "Employee Benefits Liability Insurance" portion of defendant Fireman's Fund's policies provides the following:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages on account of any claim for injury *caused by negligent act or omission in the administration of the named insured's employee benefit program*, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

The "Additional Definitions" section of the "Employees Benefits Liability Insurance" part of the policies further provide:

> "Personal injury" means injury arising out of one or more of the following offenses:
>
> (a) False arrest, detention or imprisonment, or malicious prosecution;

(b) the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;

(c) wrongful entry or eviction, or other invasion of the right of private occupancy; or

(d) *discrimination.*

(emphasis added). The second definition of "personal injury" is contained in the "Additional Definitions" section of the "Broad Form Comprehensive General Liability Endorsement G222" which is a part of the "Comprehensive General Liability Insurance" portion of the policies, and includes items (a) through (c) of the first definition, but is silent as to discrimination.

"Bodily injury" is defined thusly: " 'bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom[.]" The "Comprehensive General Liability Insurance" section of the policies provides,

> The Company [(defendant Fireman's Fund)] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . . property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent, . . . .

This coverage was explicitly stated to be inapplicable "to bodily injury to any employee of the insured arising out of and in the course of employment by the insured."

A. The Applicable Definition of "Personal Injury"

First, plaintiff argues that the second definition of personal injury (found in the "Broad Form Comprehensive General Liability Endorsement G222" portion of the policies) does not indicate that it is exclusive of the first definition (found in the "Employee Benefits Liability Insurance" section of the policies) and does not expressly remove discrimination from the concept of personal injury. As such, plaintiff contends that any ambiguity between the two definitions must be construed against the drafter, defendant Fireman's Fund. *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 392, 390

S.E.2d 150, 153 (1990). While it is true, as plaintiff contends, that the canons of insurance policy construction provide that an insurance policy must be given the same meaning throughout the various coverages in the absence of a clear expression therein of an intent that the term be given different meanings with reference to the different coverages in the same policy, *Grant v. Insurance Co.*, 295 N.C. 39, 54, 243 S.E.2d 894, 904 (1978), it appears to this Court that the definition of "personal injury" under the "Employee Benefits Liability Insurance" coverage part of plaintiff's insurance policies is not applicable to the remaining coverages of the policies. The "Employee Benefits Liability Insurance" section of the policies are clearly labelled as such, and appears separate and apart from the "Broad Form Comprehensive General Liability Endorsement G222" part of plaintiff's policies. It seems clear, on the face of the policies, then, that the two definitions are exclusive of each other. Moreover, as the underlying actions do not appear to arise out of or during the course of the administration of plaintiff's employee benefits program, the definition of personal injury included therein would not work to plaintiff's advantage in this case. *See Tomlin v. State Farm Mut. Auto. Liability*, 290 N.W.2d 285 (Wis. 1980). We must still, however, examine whether the underlying discrimination claims fall within the applicable definition found in the "Broad Form Comprehensive General Liability Endorsement G222" section of the "Comprehensive General Liability Insurance" part of defendant Fireman's Fund's policies.

B. Coverage for "Personal Injury" Under "Broad Form Comprehensive General Liability Endorsement G222"

    While we are aware that some courts have found discrimination claims to be akin to claims for personal injury, *see Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661, 96 L. Ed. 2d 572 (1987); *Wilson v. Garcia*, 471 U.S. 261, 85 L. Ed. 2d 254 (1985); *see also Redfield v. Insurance Co. of North America*, 940 F.2d 542 (9th Cir. 1991) (finding that discrimination damages awarded to a terminated employee are tort-type recovery for personal injuries that are excludable from gross income for purposes of federal income tax), we are also cognizant of several courts' decisions that hold that the definitions of a term, when specifically defined in a policy, will govern in a subsequent action. *See Liberty Bank of Montana v. Travelers Idem. Co.*, 870 F.2d 1504 (9th Cir. 1989) (finding that the policy specifically provided coverage only for those claims which arose out of an enumerated tort); *United Pacific Insurance Co. v. First Interstate*

*Bancsystems of Montana,* 690 F. Supp. 917 (D. Mont. 1988) (referencing *Aetna Cas. & Sur. Co. v. First Sec. Bank of Bozeman,* 662 F. Supp. 1126 (D. Mont. 1987), and finding that the underlying damages did not fall within the specific definitions of bodily injury or property damage contained in the policy); *see also Jefferson-Pilot Fire & Cas. v. Sunbelt Beer,* 839 F. Supp. 376 (D.S.C. 1993) (stating that what is not plainly included within the enumerated torts is by definition excluded). In this case, personal injury is defined in the Broad Form Comprehensive General Liability Endorsement portion of defendant Fireman's Fund's policies to include,

1. False arrest, detention, imprisonment, or malicious prosecution;

2. wrongful entry or eviction or other invasion of the right of private occupancy;

3. the publication or utterance

(a) of a libel or slander or other defamatory or disparaging material,

(b) or in violation of an individual's right of privacy . . . .

We must now determine, whether the underlying actions fall within the "personal injury" definition found in the Broad Form Comprehensive General Liability Endorsement portion of defendant Fireman's Fund's policies. This is a case of first impression in the state of North Carolina, and therefore, we seek guidance from courts of other jurisdictions which have addressed this same issue. In *Aetna,* 662 F. Supp. 1126, a discharged bank employee alleged claims for breach of the implied covenant of good faith and fair dealing, attendant contracts of employment, and for wrongful termination. She sought punitive damages and damages for lost wages, diminished earning capacity, harm to her reputation, and emotional distress. Aetna brought a declaratory action to discern its liability to provide coverage for damages sought by the discharged bank employee. The insuring clause for personal injury provided that the company would defend and indemnify the insured for all sums which the insured became legally obligated to pay as a result of personal injury. *Id.* "Personal injury" was defined as "injury arising out of one or more of the following offenses committed during the policy period." Pertinently, "(3) a publication or utterance (a) of a libel or slander or other defamatory or disparaging material . . . ." *Id.* at 1131. Aetna contended that because there were no allegations of libel, slander,

defamation or disparagement in the complaint, there was no coverage under the policy. The employer-bank, however, contended that the employee's allegations that another bank employee had told her that she was fired could constitute defamatory or disparaging material; therefore, the language of the endorsement was ambiguous. *Id.* The Montana District Court held that the "personal injury" endorsement "applied only to claims actually arising out of the enumerated torts [in the policy]." *Id.* at 1132 (citing *American & For. Ins. v. Church Sch., Diocese of Va.*, 645 F. Supp. 628 (E.D. Va. 1986)). In the end, the court held that the employee's claims therein were for "injuries arising out of the torts of bad faith and wrongful termination, [and] not out of the defamation torts set forth in the 'Broad Form Comprehensive General Liability Endorsement.'" *Id.* Accordingly, the court held that Aetna's policy afforded the bank no coverage as the complaint in the underlying action failed to allege any cause of action for defamation, as necessary before the "personal injury" endorsement could be applied. *Aetna*, 662 F. Supp. 1126; *accord Liberty Bank*, 870 F.2d 1504. While a complainant may allege damages to reputation, and mental and emotional distress arising from the complainant's discharge or failure to hire, in violation of his/her constitutional rights, such damages do not necessitate a claim for defamation. *See Aetna*, 662 F. Supp 1126; *Liberty Bank*, 870 F.2d 1504; *see also American Motorists v. Allied-Sysco Food*, 24 Cal.Rptr.2d 106 (Cal. Ct. App. 1962) (holding that the American Motorist Insurance Company's excess policy did not provide coverage for "humiliation, anguish, embarrassment and emotional distress" resulting from Allied-Sysco Food Services' sexually discriminatory practices, nor did the discrimination portion of the policy provide coverage for said damages).

The term defamation encompasses two distinct torts, libel and slander. Generally, libel is written, while slander is oral. *Tallent v. Blake*, 57 N.C. App. 249, 291 S.E.2d 336 (1982). "[A] libel *per se* is a publication . . . which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 317, 312 S.E.2d 405, 409 (citing *Flake v. News Co.*, 212 N.C. 780, 787, 195 S.E. 55, 60 (1938)), *reh'g denied*, 310 N.C. 749, 315 S.E.2d 704, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). Slander

**FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.**

[124 N.C. App. 232 (1996)]

*per se* is an oral communication to a third person which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease. *U v. Duke University*, 91 N.C. App. 171, 371 S.E.2d 701, *disc. review denied*, 323 N.C. 629, 374 S.E.2d 590 (1988); *Morris v. Bruney*, 78 N.C. App. 668, 338 S.E.2d 561 (1986). "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel." *Clark v. Brown*, 99 N.C. App. 255, 261, 393 S.E.2d 134, 137 (citing *Bell v. Simmons*, 247 N.C. 488, 494, 101 S.E.2d 383, 388 (1958)), *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). With this in mind, we must now entertain defendant Fireman's Fund's argument that the trial court erred in finding coverage for the following six (6) underlying employment discrimination claims.

### 1. The *Rosenthal* Suit

As to the *Rosenthal* lawsuit, Mr. Rosenthal's complaint, in addition to age and religious discrimination, alleged that Cannon had damaged his reputation. Plaintiff alleges that Mr. Rosenthal's allegations of damage to reputation encompass "personal injury" coverage as this included "utterance of . . . defamatory or disparaging material."

However, Mr. Rosenthal's allegations fail in any manner to make out a prima facie claim for defamation. As such, his claim fails to fall within the Broad Form Comprehensive General Liability Endorsement portion of defendant Fireman's Fund's policies.

### 2. The Price EEOC Complaint

As to the Price EEOC complaint, alleging sexual discrimination, retaliatory discharge, plaintiff contends that the fact that Cannon had falsely accused Ms. Price of manipulating the job posting system was sufficient to bring the Price complaint within the policies coverage for a "personal injury" since it was an "injury arising out of . . . [an] utterance . . . of . . . defamatory or disparaging material."

The Price EEOC complaint fails, however, to show that any of the false statements were made to anyone other than herself. As an essential element of defamation is the publishing of the falsity to another is not found herein, the Broad Form Comprehensive General Liability Endorsement portion of defendant Fireman's Fund's policies also fails to provide coverage for the Price EEOC complaint.

### 3. The *Price* Suit

For the reasons listed in subsection 2 above, we find similarly as to the *Price* lawsuit. While plaintiff contends that Patricia Price's allegations of sexual discrimination, retaliatory discharge, intimidation, harassment and defamation (i.e., accusation that Ms. Price manipulated the job posting system), contained allegations which would bring the suit within defendant Fireman's Fund's coverage of "personal injury," we do not agree. Nor do we find the allegations of intimidation and harassment to charge "violation of an individual's right of privacy." Accordingly, the Broad Form Comprehensive General Liability Endorsement portion of defendant Fireman's Fund's policies do not provide coverage for the *Price* lawsuit.

### 4. The *Overcash*/Class Action

As to the *Overcash*/class action lawsuit, the only hint of personal injury within the definition found in the Broad Form Comprehensive Liability Endorsement portion of defendant Fireman's Fund's policies is the allegations of Ms. Price that she had been harassed and falsely accused of "(i) lying and (ii) causing problems." However, again, we find no evidence of the necessary publishing of this information to a third person by the person who made these false accusations; and therefore, there is no prima facie case for defamation present herein. As such, there is an absence of "personal injury" as defined by the Broad Form Comprehensive General Liability Endorsement part of defendant Fireman's Fund's policies in the *Overcash*/class action lawsuit.

### 5. The *Wilson* Suit and the EEOC Sex Class Investigation

Plaintiff concedes that the other two underlying claims fail to allege any claims other than discrimination (which we have already determined is not covered in the policies) that are covered under defendant Fireman's Fund's policies. Accordingly, there is no coverage for these underlying actions under the Broad Form Comprehensive General Liability Endorsement portion of defendant Fireman's Fund's policies.

Since the defendant Fireman's Fund's "Broad Form Comprehensive General Liability Endorsement G222" coverage's definition explicitly fails to include discrimination as a "personal injury," and none of the underlying actions state a claim within the definition for "personal injury" found in that particular section, we find no claim for

personal injury in any of the underlying actions to exist for coverage within that section of defendant Fireman's Fund's policies.

C. Coverage for "Bodily Injury" Under "Broad Form Comprehensive General Liability Endorsement G222"

Next, we must inquire whether the underlying actions were covered under defendant Fireman's Fund's "Broad Form Comprehensive General Liability Endorsement G222," included in the "Comprehensive General Liability Insurance" section of the policies as a "bodily injury." "Bodily injury" as defined in the "Definitions" section of the policies means "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."

The *Rosenthal* complaint contained allegations that plaintiff had negligently or intentionally inflicted emotional distress upon Mr. Rosenthal; and plaintiff argues that these allegations of negligent and intentional infliction of emotional distress fall within the "bodily injury" coverage of the policies as North Carolina courts and New York courts (where Mr. Rosenthal instituted his action) have recognized that damages from those two torts (especially decreased life expectancy) are "bodily injuries." Conversely, in the cases of the Price EEOC complaint, the *Price* lawsuit, the *Overcash*/class action, the *Wilson* suit and the EEOC sex class investigation, the record is devoid of any allegations of "bodily injury" within the definition of defendant Fireman's Fund's policies.

It is not necessary, however, that we make a final determination of this question of "bodily injury" coverage for the *Rosenthal* suit, if coverage is excluded for the underlying employment discrimination actions. The "Exclusions" section of the Comprehensive General Liability Insurance section of defendant Fireman's Fund's policies provides that,

This insurance does not apply:

. . .

(i) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obli-

gation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract . . . .

Plaintiff argues that exclusion (j), as well as (i) applies only to workers' compensation cases. Plaintiff cites *Save Mart Supermarkets v. Underwriters*, 843 F. Supp. 597 (N.D. Cal. 1994), in which the court decided that an exclusion clause much like clause (j) above, was ambiguous and open to more than one interpretation. Accordingly, the court found that there were genuine issues of material fact surrounding its interpretation and thus, summary judgment was inappropriate as to coverage based on the "employee exception." *Id.* at 604.

Defendant, however, cites *Omark Industries v. Safeco Ins. Co. of America*, 590 F. Supp. 114 (D. Or. 1984), in support of its argument to the contrary. In *Omark*, the court construed a provision similar to exclusion (j) in defendant Fireman's Fund's policies. In that case, the court distinguished the line of cases that had found various policies' exclusions were applicable to workers' compensation only—finding that those policies' exclusions had specifically mentioned workers' compensation. In *Omark*, since there was no such mention in the policy therein, the court declined to limit the exclusion to workers' compensation and found that the sex discrimination case was excluded from coverage. *Id. Accord, Sunbelt Beer*, 839 F. Supp. 376.

As in the line of cases cited in *Omark*, the policy exclusion (i) herein specifically mentions and excludes liability for any bodily injury for which the insured or any carrier would be liable under workers' compensation law. *See Eagle Star Insurance Company, Ltd. v. Deal*, 474 F.2d 1216 (8th Cir. 1973); *Spain v. Travelers Insurance Company*, 332 So.2d 827 (La. 1976); *I-L Logging Co. v. Manufacturers & Wholesalers Ind. Exch.*, 273 P.2d 212, *reh'g denied*, 275 P.2d 226 (Or. 1954); *but see Federal Rice Drug Co. v. Queen Insurance Co. of America*, 463 F.2d 626 (3rd Cir. 1972) (refusing to limit the scope of an exclusion similar to exclusion (j) herein, to apply to workers' compensation cases only). However, exclusion (j) fails to reference workers' compensation, stating only that coverage would not be provided for bodily injury "arising out of and in the course of [ ] employment by the insured." We find persuasive that exclusion (i) specifically references liability for injuries covered under workers' compensation, while exclusion (j) does not. Contrary to the court in *Save Mart*, we find no ambiguity in the policy exclu-

FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.

[124 N.C. App. 232 (1996)]

sion (j). A reading of exclusions (i) and (j) *in tandem* reveals an exclusion of liability for bodily injuries covered under workers' compensation law pursuant to exclusion (i) and a similar exclusion for all other bodily injuries arising out of and in the course of employment by insured pursuant to exclusion (j), with the exception of liability assumed by the insured under an incidental contract for those bodily injuries. Accordingly, we find that bodily injury exclusion (j) prohibits liability for bodily injuries (assuming that such injuries were alleged in the underlying suits) arising out of and in the course of employment with plaintiff.

Hence, the trial court erroneously found that defendant Fireman's Fund's policies provided coverage for the Price EEOC complaint, the *Price* lawsuit, the *Overcash*/class action, the *Wilson* suit and the EEOC sex class investigation. However, as the *Rosenthal* suit does not arise out of and in the course of his employment with plaintiff—Mr. Rosenthal's employer-company was bought by plaintiff and as a consequence, Mr. Rosenthal was informed thereafter that plaintiff would no longer retain his services—this exclusion does not prohibit coverage for his underlying employment discrimination action. We must, therefore, now inquire whether Mr. Rosenthal's suit alleges "bodily injuries" within the meaning of defendant Fireman's Fund's "Comprehensive General Liability Insurance" coverage.

The *Rosenthal* complaint alleged that as a result of plaintiff's actions, he "became tense, nervous, irritable, suffered immense mental and emotional anguish and distress, and anxiety; . . . has become unable to enjoy his life, family and friends, and has been forced to endure tremendous embarrassment which has placed him under great emotional stress and strain which will ultimately decrease . . . [Mr. Rosenthal's] life expectancy . . . ."

The courts of this jurisdiction have recognized the torts of negligent infliction of emotional distress and intentional infliction of emotional distress as actions for bodily injury. *See Johnson v. Ruark Obstetrics*, 327 N.C. 283, 292, 395 S.E.2d 85, 90 (reiterating that " 'the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter. Indeed, the sufferings of each frequently, if not usually, act reciprocally on the other.' "), *reh'g denied*, 327 N.C. 544, 399 S.E.2d 133 (1990).

In order to prevail in an action for negligent infliction of emotional distress, a plaintiff must show that "(1) the defendant negli-

gently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Id.* at 304, 395 S.E.2d at 97. Further, a prima facie showing for intentional infliction of emotional distress requires that the plaintiff demonstrate the following: (1) the defendant "engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress." *Bryant v. Thalhimer Brothers, Inc.*, 113 N.C. App. 1, 6-7, 437 S.E.2d 519, 522 (1993), *appeal dismissed and disc. review denied*, 336 N.C. 71, 445 S.E.2d 29 (1994).

In both contexts "the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97. "[M]ere temporary fright, disappointment or regret will not suffice." *Id.* Further, in the context of intentional infliction of emotional distress, the element of "extreme and outrageous conduct," has been defined as " 'conduct [which] exceeds all bounds usually tolerated by decent society.' " *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting William L. Prosser, *Handbook of The Law of Torts* § 12, at 56 (4th ed. 1971)). Liability for this tort " 'clearly does not extend to mere insults, or indignities.' " *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (quoting *Daniel v. Carolina Sunrock Corp.*, 110 N.C. App. 376, 383, 430 S.E.2d 306, 310, *rev'd in part*, 335 N.C. 233, 436 S.E.2d 835 (1993)), *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994). Moreover, a plaintiff must set forth specific incidents of conduct which " 'exceed[] all bounds usually tolerated by decent society.' " *Stanback*, 297 N.C. at 196, 254 S.E.2d at 622 (quoting Prosser, *The Law of Torts* § 12, at 56).

After careful examination of the record, there is nothing in the *Rosenthal* complaint alleging that plaintiff's conduct was "extreme and outrageous." Nor are there allegations which indicate that by its conduct plaintiff corporation intended that Mr. Rosenthal suffer severe emotional distress. Accordingly, Mr. Rosenthal's complaint fails to make out a claim for intentional infliction of emotional distress. We do find, however, from a review of the *Rosenthal* complaint, that there is genuine issue of fact as to whether plaintiff negligently caused Mr. Rosenthal to suffer severe emotional distress. As all evi-

**FIELDCREST CANNON, INC. v. FIREMAN'S FUND INSURANCE CO.**

[124 N.C. App. 232 (1996)]

dence is to be considered "indulgently" at the summary judgment stage of proceedings, *Fowler v. Valencourt*, 108 N.C. App. 106, 114, 423 S.E.2d 785, 790 (1992) (citing *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972)), *rev'd in part on other grounds*, 334 N.C. 345, 435 S.E.2d 530 (1993), with "the slightest doubt as to the facts entitl[ing] plaintiff to a trial," *id.* (citing *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657, *appeal dismissed and disc. review denied*, 312 N.C. 85, 321 S.E.2d 899 (1984)), plaintiff is entitled to a trial on the issue of whether Mr. Rosenthal's claim for negligent infliction of emotional distress adequately presents a claim for "bodily injury" within the definition of the "Comprehensive General Liability Insurance" coverage part of defendant Fireman's Fund's policies.

Since the *Rosenthal* suit includes a prima facie showing for negligent infliction of emotional distress, and such is a "bodily injury" within the meaning of defendant Fireman's Fund's policies, we find that the trial court was correct in its decision that defendant Fireman's Fund provided insurance coverage for the *Rosenthal* suit. However, the court was in error in its conclusion that defendant Fireman's Fund's policies provided coverage for the other underlying employment discrimination claims and suits brought against plaintiff.

## III.

In light of our finding in Section II, we need not entertain defendant Fireman's Fund's remaining arguments: (1) that the trial court committed reversible error in concluding that notice to Wayne Johnson, defendant Fireman's Fund's agent, constituted notice to defendant Fireman's Fund; and (2) that the trial court committed reversible error in concluding that plaintiff's claims for recovery of the legal fees and expenses incurred in defending the *Overcash*/class action prior to 5 December 1995, the *Price* and *Wilson* lawsuits, the Price EEOC complaint and the EEOC sex class investigation, and the settlement payment for the *Wilson* lawsuit, survived the statute of limitations.

## IV.

Plaintiff raises two issues on cross-appeal: (1) In the event that summary judgment against defendant Fireman's Fund on the coverage issue is reversed, the court should reverse summary judgment in favor of defendant Guaranty; and (2) In the event that summary judgment against defendant Fireman's Fund on the coverage issue is reversed, the trial court's order dismissing defendant North River

should be reversed and the trial court's grant of summary judgment against defendant North River on the issue of coverage should be reactivated. Notably, both umbrella carriers' policies provide coverage in the event that defendant Fireman's Fund does not cover the underlying claims.

As the trial court's orders granting summary judgment for defendant Guaranty and granting defendant North River's motion to dismiss were premised upon the proposition that defendant Fireman's Fund was responsible for coverage of all of the underlying employment discrimination claims, and as we find herein that defendant Fireman's Fund did not provide coverage for the Price EEOC complaint, the *Price* lawsuit, the *Overcash*/class action, the *Wilson* suit and the EEOC sex class investigation claims, the trial court's orders granting summary judgment for defendant Guaranty and a dismissal for North River as to these underlying claims must be reversed also. We, however, affirm the trial court's orders for defendants Guaranty and North River as to the *Rosenthal* suit.

In conclusion, we hold (1) that defendant Fireman's Fund's general liability policies afforded plaintiff coverage for the *Rosenthal* lawsuit only—not for the remaining underlying discrimination claims as found by the trial court, and therefore, the trial court erred in denying defendant Fireman's Fund's motion for summary judgment as to those remaining underlying discrimination claims; (2) that the trial court also erred in granting defendant North River's motion to dismiss, as its umbrella policy affords plaintiff excess coverage for the underlying discrimination claims, which are not covered by defendant Fireman's Fund's general liability policies; and (3) that defendant Guaranty's motion for summary judgment was improperly granted as to the remaining underlying discrimination claims which are uncovered by defendant Fireman's Fund's general liability policies. Accordingly, the 26 April 1993 order of the trial court denying defendant Fireman's Fund's motion for summary judgment and granting defendant Guaranty's motion for summary judgment is reversed as to all of the underlying discrimination claims, with the exception of the *Rosenthal* suit; its 30 June 1993 order granting defendant North River's motion to dismiss is similarly reversed; and finally, the 7 December 1994 judgment awarding plaintiff damages against defendant Fireman's Fund for the underlying discrimination claims, save the *Rosenthal* suit, is reversed and the matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges MARTIN, John C. and McGEE concur.