WILLIAM A. CRIDER, JR., Plaintiff v. THE JONES ISLAND CLUB, INC., Defendant

WILLIAM A. CRIDER, JR., Plaintiff v. THE JONES ISLAND CLUB, INC., A North Carolina Corporation, Defendant

ANN CRIDER, WILLIAM CRIDER, III, VIRGINIA CRIDER MOCK and CYNTHIA CRIDER JARRELL, Plaintiffs v. THE JONES ISLAND CLUB, INC., Defendant

No. COA00-1429

(Filed 20 November 2001)

**1. Real Property— Timber and Hunting Agreement—interpretation—issue of fact**

The trial court erred by granting summary judgment for defendant on the interpretation of a clause in a Timber and Hunting Agreement where it was unclear from the Agreement as to how to apply the provisions as to guests and restrictions. These ambiguities create an issue of material fact for the jury and thus allow consideration of extrinsic evidence.

**2. Real Property— Timber and Hunting Agreement—inability to acquire permits**

The trial court erred by granting summary judgment for defendant on the interpretation of a Timber and Hunting Agreement regarding timber rights where the court found that it would be futile for plaintiff to attempt to obtain the necessary permits to cut timber, but the Agreement does not contain a futility provision. Whether plaintiff exercised reasonable efforts to obtain the necessary permits or whether the timber could be harvested in an economically and environmentally feasible manner prior to the expiration date of the timber provision is a question of fact.

Appeal by plaintiffs from an amended memorandum and judgment dated 1 April 1999 by Judge Dennis J. Winner and from an order of summary judgment filed 18 September 2000 by Judge Benjamin G.

Alford in Pamlico County Superior Court. Heard in the Court of Appeals 9 October 2001.

*Ward and Smith, P.A., by John M. Martin, for plaintiff-appellants.*

*Daughtry, Woodard, Lawrence & Starling, L.L.P., by Luther D. Starling, Jr. and Kelly Daughtry, for defendant-appellee.*

GREENE, Judge.

William A. Crider, Jr. (Crider), Ann Crider (Ann), William Crider, III (William), Virginia Crider Mock (Virginia), and Cynthia Crider Jarrell (Cynthia) (collectively, Plaintiffs) appeal a judgment dated 1 April 1999 granting summary judgment in favor of The Jones Island Club, Inc. (Defendant) on the issue of Plaintiffs' hunting rights. Plaintiffs also appeal a judgment filed 18 September 2000 granting summary judgment in favor of Defendant on the issue of Crider's timber rights.

Crider was the sole general partner of CT Associates, Limited (CT Associates), a Georgia limited partnership. In 1984, CT Associates purchased "tracts of land located in the Pamlico Sound known as Jones Island or Governor's Island" (the Property). Crider, an avid hunter and "outdoorsman," primarily purchased the Property to provide his family and himself with an unrestricted place to hunt, subject only to the rules and regulations of the state of North Carolina.

In 1985, L. Stephen Wright (Wright), a director and officer of The Jones Island Company (the Company),[1] began negotiations with Crider to purchase the Property. As a result of the negotiations, Crider sold the Property to the Company. On 3 September 1985, Crider, on behalf of CT Associates, and Wright, on behalf of the Company, entered into a Timber and Hunting Agreement (the Agreement) as a condition to and as consideration for the sale of the Property. The Agreement provided, in pertinent part:

1. <u>Timber Rights</u>. CT [Associates] reserves for itself, its successors and assigns, for a period of ten (10) years following the date hereof, the right to, and easements for ingress and egress necessary to, harvest and remove any and all merchantable tim-

---

1 The Company was Defendant's predecessor in interest.

ber and pulpwood located on the Property, subject, however, to the following conditions:

. . . .

(e) It is understood that CT [Associates] has as of the date hereof been unable to obtain the necessary permits to harvest the timber and pulpwood from Tracts 20, 21, 22, 33, 34, 35 & 36 . . . . CT [Associates] shall have ten (10) years from the date said permits are issued to harvest said pulpwood and timber, but in any event, said pulpwood and timber must be harvested on or before August 1, 2005. CT [Associates] shall exercise reasonable efforts to secure the necessary permits, and [the Company] will at the request of CT [Associates] cooperate in the efforts of CT [Associates] to secure the same. [(1(e))].

2. Hunting. [Crider,] his spouse, children and guests (not to exceed 4 at any one time) may hunt on any or all of the Property at any time and from time to time without restriction, payment or charge of any kind; provided however they shall obey all nondiscriminatory rules and regulations generally applicable to all persons hunting on the Property.

. . . .

4. Successors. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their heirs, representatives, successors and assigns.

In 1986, the Company, proceeding with its plan to develop a hunting club on the Property, formed the Old South Rod and Gun Club Owner's Association (the Association). The Association's primary responsibility was to develop hunting club rules. One of the rules developed by the Association was the "Designated Member Rule" (the DM Rule) which provided "[e]ach membership or unit (33 total) will be entitled to designate one person on March 1 and/or September 1 of each year, in writing to the Manager, who will become the 'Designated Member' for that membership." The designated member had to be present for the membership to be used in any way, including hunting, fishing, and lodging. With regard to duck hunting, the DM Rule specifically provided that each designated member was entitled to one "blind-site" per draw. The drawings for blinds were held daily at 11:30 a.m. and 7:00 p.m. during duck hunting season.

CRIDER v. JONES ISLAND CLUB, INC.

[147 N.C. App. 262 (2001)]

On 27 March 1985, Crider filed an application with the Division of Coastal Management (DCM) to obtain "CAMA" permits to construct logging roads and remove timber from the Property. DCM informed Crider his application would be denied. Crider requested his application be placed in a hold posture instead of DCM denying it. Subsequently, Crider's application for "CAMA" permits was placed on hold. In January 1986, DCM informed Crider that "a permit was not going to be issued because of numerous environmental problems." In February 1987, Crider's application for "CAMA" permits was placed in DCM's inactive file. Despite Crider's efforts to obtain "CAMA" permits, DCM refused to issue the permits because of problems with wetland issues. After continuing efforts through 1989, Crider's attorney informed Crider that in his opinion, "further attempts to procure the necessary permits to log would be extremely expensive and probably futile." There were, however, other alternatives available to Crider for harvesting, removing, and marketing the timber, but those alternatives were either economically or environmentally unfeasible. On 5 August 1992, CT Associates transferred its timber rights to Crider and his heirs. Between 1990 and 1995, Crider and his attorney continued to monitor environmental regulations to ascertain any possible change in the status of Crider's application, and Crider's application for "CAMA" permits remains in a hold status with DCM.

Sometime during the mid-1990's, the Association notified Crider it "was taking the position that [Crider's] hunting rights were restricted." First, Crider could have a total of only four people hunt on the Property at one time; and second, Crider and his family were entitled to use only one duck blind per visit. By letter dated 10 February 1997, Louis M. Wade, Jr., President of Defendant, informed Crider his timber rights had expired and "any attempts by either [Crider] or anyone on [his] behalf to cut timber located on [Defendant's] property [would] be considered as an unlawful entry."

On 21 July 1997, Crider filed a complaint seeking a judgment declaring: he had the sole right to cut timber on the Property until 2005; he and his family were not restricted by the DM Rule or the one-duck-blind-per-day rule; and each member of his family was entitled to four guests at one time. In an answer and counterclaim filed 1 October 1997, Defendant denied the allegations of Plaintiff's complaint and counterclaimed for: a judgment declaring Defendant had the sole and exclusive right to cut and harvest timber on the Property; a judgment declaring Crider and his family members did

not have hunting rights individually as contended by Crider; and a trial by jury on all issues of fact. Defendant and Crider filed cross-motions for summary judgment on 18 and 19 August 1998.[2] In an order dated 1 April 1999, the trial court concluded: the agreement was unambiguous with regard to the hunting rights; Crider's hunting parties could not be limited to four people; the DM rule and one-blind-per-day rule were applicable to Crider; and at no time could Crider have more than one draw or utilize more than one duck blind. In June 1999, Ann, William, Virginia, and Cynthia (collectively, Crider's family) filed a complaint seeking a declaratory judgment to determine their hunting rights pursuant to the Agreement. In a consent order filed 13 December 1999, the parties agreed to allow Crider's family to intervene and be joined as parties in the original action filed by Crider. The consent order also provided that the 1 April 1999 order was binding on the intervening parties.

On 3 August 2000, Plaintiffs moved the trial court for partial summary judgment on the issue of whether Crider's timber rights expired on 3 September 1995. In an order filed 18 September 2000, the trial court awarded Defendant summary judgment on the issue of Crider's timber rights, finding that further efforts by Crider to obtain the necessary permits to cut timber would be "futile."

---

The issues are whether: (I) the hunting rights provision is ambiguous and therefore a question of fact for the jury; and (II) the trial court erred in writing a futility provision into the terms of Crider's timber rights thereby terminating those rights.

If the language of a contract "is clear and only one reasonable interpretation exists, the courts must enforce the contract as written" and cannot, under the guise of interpretation, "rewrite the contract or impose [terms] on the parties not bargained for and found" within the contract. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). If the contract is ambiguous, however, inter-

---

2. The parties stipulated, with respect to both the hunting and timber rights, the questions involved were "questions of law and not of fact." This stipulation, however, is not binding on this Court, as this Court's review of a trial court's grant of summary judgment "addresses the trial court's conclusions as to whether, viewing the evidence in the light most favorable to the non-moving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law." *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 124 N.C. App. 232, 239, 477 S.E.2d 59, 64 (1996), *disc. review denied*, 348 N.C. 497, 510 S.E.2d 383 (1998). Thus, we determine *de novo* whether there are any genuine issues of fact. *See id.*

**CRIDER v. JONES ISLAND CLUB, INC.**

[147 N.C. App. 262 (2001)]

pretation is a question of fact, *Barrett Kays & Assoc., P.A. v. Colonial Bldg. Co., Inc. of Raleigh*, 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998), and resort to extrinsic evidence is necessary, *Holshouser v. Shaner Hotel Grp. Props. One*, 134 N.C. App. 391, 397, 518 S.E.2d 17, 23, *disc. review denied*, 351 N.C. 104, 540 S.E.2d 362 (1999), *aff'd per curiam*, 351 N.C. 330, 524 S.E.2d 568 (2000). "An ambiguity exists in a contract if the 'language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' "[3] *Barrett*, 129 N.C. App. at 528, 500 S.E.2d at 111 (citations omitted). Thus, if there is any uncertainty as to what the agreement is between the parties, a contract is ambiguous. *Id.* This Court's "review of a trial court's determination of whether a contract is ambiguous is *de novo*." *Id.*

I

*Hunting rights*

**[1]** Plaintiffs argue the trial court erred in determining the hunting rights clause was unambiguous. We agree.

In this case, an ambiguity exists with respect to Plaintiffs' hunting rights because it is unclear from the Agreement as to how to apply the words of the hunting rights provision. Specifically, the Agreement is unclear whether each individual member of Crider's family is limited to four guests at one time or whether only four people, including Crider, his family, and their guests, are allowed to hunt on the Property at one time. Additionally, the Agreement states Plaintiffs would be allowed to hunt on the Property without restriction, but then subjects these "unrestricted" hunting rights to "nondiscriminatory rules and regulations," without specifying what is meant by "nondiscriminatory rules" and whether these rules apply to hunting conduct or to hunting rights. These ambiguities create an issue of material fact for the jury and thus allow consideration of extrinsic evidence. Accordingly, the trial court erred in granting summary judgment in favor of Defendant on Plaintiffs' hunting rights. *See Holshouser*, 134 N.C. App. at 398-99, 518 S.E.2d at 24 (summary judgment is inappropriate where issues of material fact exist).

---

3. We note some cases distinguish between latent and patent ambiguities in construing contracts and determining whether to admit extrinsic evidence. More recent cases, however, have not used this distinction and instead generally rely on whether an ambiguity exists in determining whether to admit extrinsic evidence. *See* 11 Samuel Williston, *A Treatise on the Law of Contracts* § 33:40, at 816-18 (Richard A. Lord ed., 4th ed. 1999).

**[2]** Plaintiffs next argue the trial court erred in concluding Crider had no rights to the timber located on the tracts described in 1(e) of the Agreement. We agree.

In this case, the trial court found it would be futile for Crider to attempt to obtain the necessary permits to cut timber. The Agreement, however, does not contain a provision that Crider shall have rights to harvest the timber until his efforts to obtain the necessary permits would be futile; thus, the trial court erred in imposing a futility requirement on Crider's timber rights under the Agreement. Whether Crider exercised reasonable efforts to obtain the necessary permits or whether the timber could be harvested in an economically and environmentally feasible manner prior to 1 August 2005 without the permits is a question of fact. *See Smith v. Currie*, 40 N.C. App. 739, 742-43, 253 S.E.2d 645, 647 (whether a party exercised "reasonable efforts" is ordinarily a question of fact as it is "the type of question that depends for its resolution on a consideration of the subjective intentions and motivation of the actor," and therefore inappropriate for summary judgment), *disc. review denied*, 297 N.C. 612, 257 S.E.2d 219 (1979). Accordingly, as the trial court erred in granting summary judgment for Defendant on Crider's timber rights, this case is remanded for a jury to determine whether Crider's timber rights terminated prior to 1 August 2005.

Reversed and remanded.

Judges HUNTER and THOMAS concur.