IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1337

Filed: 15 December 2015

Wake County, No. 13 CVS 12558

LANDOVER HOMEOWNERS ASSOCIATION, INC., Plaintiff,

v.

THOMAS B. SANDERS; ANNA B. SANDERS; SANDERS EQUIPMENT COMPANY, INC.; and SANDERS DEVELOPMENT COMPANY, L.L.C., Defendants.

Appeal by plaintiff from order entered 1 July 2014 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 11 August 2015.

*Harris & Hilton, P.A., by Nelson G. Harris, for plaintiff-appellant.*

*Law Offices of F. Bryan Brice, Jr., by Matthew D. Quinn, for defendant-appellees.*

BRYANT, Judge.

Where ambiguities exist in the language of a declaration which create an issue of material fact, the trial court erred in granting summary judgment to defendants, and we reverse.

Defendants Thomas B. Sanders and Anna B. Sanders are husband and wife, who together own 95% of defendant Sanders Equipment Company, Inc. ("SEC"). The Sanders' two adult daughters, Deborah and Barbara, own the remaining 5%. The remaining defendant is Sanders Development Company, LLC ("SDC"), which was

formed in 1997 for the purpose of buying property for development. Its sole members are Thomas, Deborah, and Barbara, with each owning a one-third membership interest.

Sanders Landover, LLC ("Sanders Landover") was formed on 12 April 2000. Like SDC, Sanders Landover was created and organized to buy, develop, and sell property, with Thomas Sanders and his two daughters each owning one-third of its membership interest. On 14 April 2000, two days after it was formed, Sanders Landover purchased a 56.63 acre tract of land in Wake County, paying approximately $700,000, which Sanders Landover had borrowed from SEC without any security. In early 2002, Sanders Landover recorded a plat for a portion of the 56.63 acre tract identified as "Landover Sections 1–3, 7–9."

Landover Homeowners Association, Inc. (alternatively, "HOA" or "plaintiff-Association") was formed on 10 May 2002 with the initial board consisting of Thomas, Deborah, and Barbara.[1] On 27 May 2002, Sanders Landover recorded a subdivision declaration in the Wake County Registry ("the 2002 declaration"). The 2002 declaration defines "Declarant" as

> Sanders Landover L.L.C., its successors and assigns, if
> such successors or assigns should acquire more than one
> undeveloped Lot from the Declarant for the purpose of
> development or if such successors or assigns should acquire

---

[1] Landover Homeowners Association, Inc. has since been turned over to the property owners within Landover Subdivision ("Q: So before it was transferred, who were the Directors of Landover Homeowners Association? A: I guess it would be the same; all of us that were in the – in the Landover, LLC.").

more than one Lot, whether developed or undeveloped, pursuant to foreclosure or a deed in lieu of foreclosure.

The 2002 declaration further subjected Sanders Landover's "Landover Sections 1–3, 7–9" to various covenants and conditions, including a requirement to pay annual and special assessments as levied by the HOA. Article VI, section 17 of the 2002 declaration stated, in pertinent part:

> During the Declarant Control Period, the Declarant shall pay annual and special assessments for all vacant Lots at an amount equal to one-half (1/2) of the applicable assessment. These assessments may be enforced against Declarant and collected by the [Homeowners] Association in the same manner as annual assessments applicable to other Owners.

Sanders Landover, as the original Declarant, was given wide latitude to assign its Declarant rights: "Declarant specifically reserves the right, in its sole discretion . . . [to] assign any or all of its rights, privileges and powers under this Subdivision Declaration or under any Supplemental Declarations."

Article I, section m of the 2002 declaration specifies that the "Declarant Control Period" will end no later than when the first one of three specified conditions occurs.[2] The only one of the three specified conditions which has been met is the

---

[2] The three specified conditions are as follows:

> "Declarant Control Period is defined as the period of time beginning at the time of recording of this Declaration in the Registry and ending on the first to occur of the following:

arrival of "5:00 p.m. on the date that is seven (7) years following the date of recordation" of the 2002 declaration. Thus, under the terms of the 2002 declaration recorded on 4 June 2002, the Declarant Control Period ended no later than 5:00 p.m. on 4 June 2009.

On 9 September 2002, Sanders Landover conveyed to SDC a 9.71-acre portion ("the townhome tract") of the original 56.63 acre tract. On 11 September 2003, a plat for the 9.71-acre townhome tract was recorded, and designated as "Landover Subdivision, Phases 4–6," thereby making it subject to the 2002 declaration containing covenants, conditions, and requirements imposed by the HOA. By 24 February 2004, all 9 sections or phases of Landover Subdivision were subject to the 2002 declaration. On 2 November 2005, SDC recorded a plat for the townhome tract

(i)     the later of 5:00 p.m. on the date that is seven (7) years following the date of recordation of this Declaration in the Registry.

(ii)    the date on which the total number of votes entitled to be cast by the Class A Members and the Class B Members of the Association equal the total number of votes entitled to be cast by the Declarant, as the Class C Member of the Association (the total number of votes of either of the three classes of membership in the Association may be increased or decreased by the annexation of Additional Property or withdrawal of portions of the Property as provided herein); and in such instances Class C Membership may be reinstated.

(iii)   the date specified by the Declarant in a written notice to the Association.

showing 81 lots. On 5 December 2005, SDC conveyed Lots 1–16 of the townhome tract to Ross Construction ("Ross").

On 31 March 2006, Deborah signed and filed Articles of Dissolution for Sanders Landover, effective 31 December 2005.[3] Therefore, Sanders Landover is not a party

---

[3] Nowhere in the record or briefs before this Court is there any indication of what happened to the remaining 46.92 acres owned by Sanders Landover after it sold the 9.71 acre townhome tract to SDC and prior to its dissolution on 31 December 2005. However, there is evidence that Sanders Landover, despite having been dissolved, was still listed as the title owner to some property:

> Plaintiff's Attorney: . . . [C]an you tell me why Sanders Landover, LLC was dissolved effective December 31st, 2005?
>
> Thomas B. Sanders: Well, we were through with that particular section.
>
> Plaintiff's Attorney: Did Sanders Landover, LLC have title to any of the property that you're aware of?
>
> Thomas B. Sanders: You mean after that time?
>
> Plaintiff's Attorney: As of December 31st of 2005?
>
> Thomas B. Sanders: I don't – I think all land – all – the lots had been sold. Everything had been sold and transferred to other people.
>
> . . .
>
> Plaintiff's Attorney: Well, would it surprise you to learn that Sanders Landover, LLC continued to have title to property after December the 31st of 2005?
>
> Thomas B. Sanders: I don't know where it would be.
>
> Plaintiff's Attorney: Okay. All right. Well, were you aware that it had title to – well, were you aware that to this day it still has title to the common areas?
>
> Thomas B. Sanders: No, I have no idea.
>
> Plaintiff's Attorney: And were you aware that it did have title to some

to this action. On 13 June 2006, SDC conveyed 11 additional townhome lots to Ross, such that Ross owned 27 townhome lots and SDC owned the remaining 54 townhome lots.

On 25 July 2006, a second supplemental declaration ("the 2006 second supplemental declaration") for the subdivision was recorded, purportedly by Sanders Landover, plaintiff-association, and Ross. The 2006 second supplemental declaration recited, *inter alia*, that Sanders Landover owned certain lots subject to the declaration. This was incorrect on two accounts. First, as noted *supra*, Sanders Landover had conveyed the entire 9.71-acre townhome tract to SDC on 9 September 2002 (which in turn had conveyed some of the lots to Ross). Second, Sanders Landover had been dissolved since 31 December 2005. The 2006 second supplemental declaration also amended Article VI, section 17 of the 2002 declaration to read as follows: "Declarant has no obligation for payment of Annual and Special Assessments. During the Declarant Control Period, the Declarant shall not pay any annual or special assessments for vacant recorded Lots."

On 6 September 2011, SDC conveyed Lots 75–81 to SEC. On 6 March 2012, SEC conveyed the same lots to Thomas and Anna Sanders. On the same date, SDC conveyed lots 64–66 and 71–74 of the townhomes to the Sanders. Thus, on 6 March

---

of the lots in the original development as of December the 31st of 2005?

Thomas B. Sanders: I didn't – at the times we dissolved it, I thought we were – had transferred all the properties.

2012, the Sanders purported to own townhome lots 64–66 and 71–81 ("the Sanders lots"). On 27 December 2012, almost seven years after its dissolution, Sanders Landover recorded an "Assignment of Declarant Rights" purporting to assign its rights under the 2002 declaration and the supplemental declarations to SDC, retroactive to 20 January 2007. On the same date, SDC recorded a second "Assignment of Declarant Rights" which purported to assign SDC's rights to Thomas and Anna Sanders. On 9 May 2013, the Sanders conveyed the Sanders lots (lots 64–66 and 71–81) to SEC, without consideration. On 26 July 2013, the Sanders recorded a third "Assignment of Declarant Rights"[4] which purported to assign their rights to SEC.

Plaintiff, Landers Homeowners Association, imposed annual assessments from 2009–2012 and four quarterly assessments in 2013. None of these assessments were paid by the owners of the Sanders lots—SEC—who had acquired them from the Sanders for no consideration. On 16 September 2013, plaintiff filed a complaint seeking payment of the unpaid assessments with interest, as well as costs and attorneys' fees. Plaintiff sought to pierce the corporate veil as regards SDC and SEC for failure to observe corporate formalities. Both sides moved for summary judgment.

---

[4] The "first" Assignment of Declarant Rights was made by Sanders Landover to assignee-SDC on 20 January 2007, however it was not recorded in the Office of the Register of Deeds of Wake County as required by statute. The "second" Assignment of Declarant Rights was made by Sanders Landover to assignee-SDC and recorded on 27 December 2012, with an effective date of 20 January 2007.

Defendants asserted various defenses, including estoppel, statute of limitations, and that the language of the second supplemental declaration—"Declarant has no obligation for payment of Annual and Special Assessments. During the Declarant Control Period, the Declarant shall not pay any annual or special assessments for vacant recorded Lots"—made clear that the owners of the Sanders lots (during the pertinent years, SDC, the Sanders, and SEC) as Declarants, had no obligation to pay any assessments. On 1 July 2014, the trial court granted summary judgment in favor of all defendants. Plaintiff appealed.

―――――――――――――――――――――――――

On appeal, plaintiff argues that the trial court erred in denying its motion for summary judgment and granting defendants' motion for summary judgment. Specifically, plaintiff argues that (I) the various defendants who owned the Sanders lots during 2009–2013 were not "Declarants" and (II) even if defendants were "Declarants," the language of the 2006 second supplemental declaration is clear in not exempting them from paying assessments, or, in the alternative, is ambiguous in its requirements such that a genuine issue of material fact remains and summary judgment was improper. We agree.

*I*

Plaintiff argues that Sanders Landover's rights under the declaration were not assigned to defendants. Specifically, plaintiff argues that defendants should not be

considered "declarants," as that term is defined in Article 1(1) of the Declaration (the 2002 declaration), for purposes of determining their liability for assessments.

Plaintiff contends that Sanders Landover cannot assign its rights as a declarant with an effective date over a year after Sanders Landover was dissolved, by instrument which was not reduced to writing and recorded for another seven and a half years. Despite the fact that plaintiff offers no authority or case law to otherwise support its proposition that a purportedly dissolved company may not assign its rights to another entity seven years after that assignor company's dissolution, we agree that declarant Sanders Landover's rights were not validly assigned to defendants. In the First Assignment, by which Sanders Landover as declarant purportedly assigned its rights to SDC, this assignment was only recorded on 27 December 2012, almost seven years after Sanders Landover's dissolution.

> A dissolved corporation continues its corporate existence *but may not carry on any business except that appropriate to wind up and liquidate its business and affairs*, including:
>
> (1)  Collecting its assets;
> (2)  Disposing of its properties that will not be distributed in kind to its shareholders;
> (3)  Discharging or making provision for discharging its liabilities;
> (4)  Distributing its remaining property among its shareholders according to their interests; and
> (5)  Doing every other act necessary to wind up and liquidate its business and affairs.

N.C. Gen. Stat. § 55-14-05(a) (2013) (emphasis added). There is nothing in the record to indicate that Sanders Landover's purported assignment of Declarant rights was related to any winding up of the corporation, nor does the law support such an assignment following a company's dissolution. *See S. Mecklenburg Painting Contractors, Inc. v. Cunnane Grp., Inc.*, 134 N.C. App. 307, 314–15, 517 S.E.2d 167, 170–71 (1999) (holding that where a corporation was dissolved on 9 March 1993, there remained no legal basis upon which to validate an alleged contract made with another party on 22 May 1997 so as to permit suit upon the alleged contract); *Piedmont & W. Inv. Corp. v. Carnes-Miller Gear Co., Inc.*, 96 N.C. App. 105, 107–08, 384 S.E.2d 687, 688 (1989) ("At the time of the attempted conveyance the plaintiff corporation was dissolved and had no legal existence. . . . Because the plaintiff corporation had no legal existence on the date of the conveyance the deed could not operate to convey title to plaintiff.").

Furthermore, while the First Assignment recites that it was retroactive to 20 January 2007, that retroactive application date is well after both the 31 December 2005 effective date of Sanders Landover's dissolution and the 31 March 2006 recording date of the Articles of Dissolution. Accordingly, Sanders Landover's declarant rights were never effectively assigned to defendant SDC and to the extent that the trial court granted summary judgment in favor of defendants because it considered defendants to be entitled to declarant status, it erred.

*II*

Plaintiff next argues that the 2006 second supplemental declaration subjects the Landover Townhome Property to the declaration and that plaintiff is owed assessments imposed and owing, during the relevant periods. Because we agree with plaintiff that declarant's rights under the declaration were not validly assigned to defendants, the declaration accordingly does not relieve defendants from their obligations to pay assessments, as stated above. However, defendants argue that since SDC, the owner of the Landover Townhome Property, did not sign the 2006 second supplemental declaration, rather Sanders Landover did, the Landover Townhome Property was not made subject to the Declaration and, therefore, no assessments are owing by defendants to plaintiff.

Plaintiff, on the other hand, contends that the use of "Sanders Landover" instead of "Sanders Development" in the 2006 second supplemental declaration was simply sloppy draftsmanship caused by the closeness of the Sanders' entities names and that, furthermore, the error was not caught because the same individuals who would have signed the 2006 second supplemental declaration for "Sanders Development, LLC" were the ones who signed on behalf of "Sanders Landover, L.L.C."[5] It would appear, then, that the intent of the 2006 second supplemental

---

[5] SDC, formed in 1997, was owned by Thomas Sanders and his two daughters, Deborah and Barbara, each owning a one-third membership interest. Sanders Landover, which was formed in 2000, was identically owned by Thomas Sanders and his two daughters, Deborah and Barbara, each owning a one-third membership interest.

declaration was for *Sanders Development Company*—not Sanders Landover—along with plaintiff and Ross to subject the Landover Townhome Property to the declaration.

Defendants' contention that the 2006 second supplemental declaration is not binding because Sanders Landover signed it and SDC did not own any of the property being subjected to the declaration is barred by the equitable doctrine of quasi-estoppel.

> The essential purpose of quasi-estoppel is to prevent a party from benefitting by taking two clearly inconsistent positions . . . . [Q]uasi-estoppel is directly grounded . . . upon a party's acquiescence or acceptance of payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts.

*Smith v. DenRoss Contracting, U.S., Inc.*, 224 N.C. App. 479, 487, 737 S.E.2d 392, 398 (2012) (quotation marks and citations omitted).

Here, SDC accepted the benefit of the 2006 second supplemental declaration by thereafter making conveyances of lots that it owned subject to its terms. On 12 January 2007, SDC conveyed "Lots 20, 21, 22, 31, 32, 34, 35, 36, 40, 41 and 42 Landover Town Homes as recorded on those plats entitled 'Landover Town Homes, Owners, Sanders Development Company' " to Ross Construction. The deed specifically provided that the conveyance was subject to "[r]estrictive covenants recorded in Book 12079, Page 434 and Book 9443, Page 484, Wake County Registry."

The restrictive covenants recorded in Book 12079, Page 434 comprise the 2006 second supplemental declaration.

Thus, SDC made conveyances of property reciting that the property conveyed was subject to the 2006 second supplemental declaration, and defendants are barred by quasi-estoppel from asserting otherwise. Defendants cannot now argue that, while Ross is bound by the 2006 second supplemental declaration following SDC's conveyance of property to Ross, which was subject to the 2006 second supplemental declaration, SDC is somehow not likewise bound by the 2006 second supplemental declaration with regards to property it still owns.

Even assuming arguendo that the former Sanders Landover principals could have validly assigned Sanders Landover's rights as a Declarant to defendants after its dissolution effective 31 December 2005, the language in the 2006 second supplemental declaration is too ambiguous to support an order granting summary judgment in favor of defendants. The language in the second supplemental declaration states as follows: "Declarant has no obligation for payment of Annual and Special Assessments. During the Declarant Control Period, the Declarant shall not pay any annual or special assessments for vacant recorded Lots."

When an ambiguity exists because a provision of an agreement or contract is unclear, it creates an issue of material fact, and summary judgment should not be granted. *See Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 267, 554 S.E.2d

863, 867 (2001) (holding the trial court erred in granting summary judgment where ambiguity existed with respect to a plaintiff's hunting rights because it was unclear from the agreement as to how to apply the words of the hunting rights provision); *see also Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 274–75, 658 S.E.2d 918, 922–23 (2008) (holding that where the language of a subprime agreement was "susceptible to differing yet reasonable interpretations, one broad, the other narrow, the contract is ambiguous and summary judgment was inappropriate" and remanding to the superior court in order to resolve the ambiguity). "An ambiguity exists in a contract if the 'language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " *Crider*, 147 N.C. App. at 267, 554 S.E.2d at 866–67 (quoting *Barrett Kays & Assocs., P.A. v. Colonial Bldg. Co., Inc. of Raleigh*, 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998)).

Here, the parties plainly disagree regarding the meaning of the provision of the 2006 second supplemental declaration at issue. The ambiguity here arises from the intended scope of the 2006 second supplemental declaration. Plaintiff argues that, reading the Declaration as a whole, it is clear that, at the time the Declarant Sanders Landover recorded the Declaration in 2002, the intent was that all lot owners would be liable for assessments with respect to the lots that they owned, except that Declarant would only be liable for one-half the amount of the assessments during the Declarant Control Period. As the Declarant Control Period is now over—it began on

4 June 2002, the day the 2002 Declaration was recorded and ended no later than seven years later on 4 June 2009—plaintiff contends that the Declaration does not completely relieve Declarant from its obligation to pay assessments; it simply provides that Declarant loses the right granted under Article VI, Section 17 of the Declaration to pay only one-half of the regular assessments.

Defendants would have us read the disputed language in the second supplemental declaration as cumulative—that declarant owed no annual or special assessments during the Declarant Control Period, nor does it owe any annual or special assessments following the end of the Declarant Control Period. Again, plaintiff would have us read the second sentence as modifying the first and read the language as indicating no intent to change Declarant's obligations to pay assessments accruing after the Declarant Control Period. Because the language in the second supplemental declaration "is fairly and reasonably susceptible to either of the constructions by the parties," the language is sufficiently ambiguous to create an issue of material fact, and the trial court erred in granting summary judgment in favor of defendants. *See Crider*, 147 N.C. App. at 267, 554 S.E.2d at 866–67.

Accordingly, to the extent the trial court granted summary judgment in favor of defendants because it considered defendants to be entitled to "declarant" status, and believed the Landover Townhome Property was not subject to the 2006 second supplemental declaration, we disagree and reverse the trial court's grant of summary

judgment.  Likewise, to the extent the trial court granted summary judgment because it found no issue of material fact based on a lack of ambiguity, we reverse. Accordingly, we remand this matter for further proceedings.

REVERSED AND REMANDED.

Judges STEPHENS and DIETZ concur.