IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-488

No. COA22-49

Filed 19 July 2022

Mecklenburg County, Nos. 20 CVS 269, 20 CVS 300

GROOMS PROPERTY MANAGEMENT, INC., DELORES BOWDIDGE, YEVETTE BOWDIDGE-JIMENEZ, PENNY LYNN CARROLL, YING DING, SHUO JIAO, DIANNE R. EASON, and BARBARA TONEY, Plaintiffs,

v.

MUIRFIELD CONDOMINIUM ASSOCIATION and WILLIAM DOUGLAS MANAGEMENT. INC., Defendants and Third-Party Plaintiffs,

v.

HOLLY MOORE and TC CORPORATE HOLDINGS, INC. f/k/a TRISURE CORPORATION, Third-Party Defendants.

---

JENNIFER HAYES, Plaintiff,

v.

MUIRFIELD CONDOMINIUM ASSOCIATION, STANAGE ELLING, MICHAEL HOWARD, LINDA KILGO, and CHARITY GUARD, Defendants.

Appeal by Defendant/Third-Party Plaintiff Muirfield Condominium Association from an Order entered 27 August 2021 by Judge Carla Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 June 2022.

*Cranfill Sumner LLP, by Steven A. Bader and Patrick H. Flanagan, for Defendant/Third-Party Plaintiff-Appellant Muirfield Condominium Association.*

*Villmer Caudill, PLLC, by Bo Caudill, for Plaintiff-Appellee Jennifer Hayes.*

*No briefs filed by the remaining parties.*

INMAN, Judge.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant/Third-Party Plaintiff Muirfield Condominium Association ("Muirfield") is the condominium association for multiple buildings totaling around 50 units.  Plaintiff Jennifer Hayes ("Ms. Hayes") owns one of the condominium units in Building 5, which was destroyed by fire on 19 December 2018.[1]

Complete exterior and interior repairs to Building 5 were estimated to cost between $1.36 and $1.46 million. Muirfield, however, received only $933,421.00 in insurance proceeds toward the repairs.  On 29 October 2019, Muirfield's board held a special meeting where it voted not to obtain a loan to cover the remaining deficiency, which included the completion of the units' interior upfit.

---

[1] Ms. Hayes's suit was consolidated with a related case brought against Muirfield by the remaining plaintiffs-appellees.  Because this appeal concerns only Ms. Hayes's claims for relief, we omit discussion of the other parties' claims except where necessary.

On 10 January 2020, Ms. Hayes filed suit in Mecklenburg County Superior Court against Muirfield and its directors for (1) declaratory relief, (2) violations of Muirfield's Declaration Creating Unit Ownership and Establishing Restrictions, Covenants, and Conditions for Muirfield (the "Declaration"), (3) violations of Chapter 47A of our General Statutes, (4) breach of fiduciary duties, and (5) negligence. Specifically, she contended Muirfield violated Chapter 47A as well as the Declaration by failing to maintain the requisite insurance coverage on the buildings.

On 24 May 2021, Ms. Hayes filed a motion for partial summary judgment seeking declaratory relief "that the Association must promptly repair and restore the damage to Plaintiff's condominium unit and the building in which Plaintiff's unit is situated," as well as an injunction requiring Muirfield to repair her unit. Muirfield maintained that the Declaration required it to insure only the building's exterior and that it had therefore complied with both the statute and its governing Declaration.

On 27 August 2021, the trial court granted Ms. Hayes's motion for partial summary judgment for declaratory relief but denied injunctive relief. Specifically, the trial court ordered

> [t]hat the Association's failure to purchase insurance sufficient to cover at least 80% of the replacement value of Building 5 constituted a violation of the COA's declarations, covenants, and restrictions and Chapter 47A of the N.C. General Statutes[,]
>
> . . . .

> [and] [t]hat the Association must comply with Chapter 47A of the N.C. General Statutes, including but not limited to N.C. Gen. Stat. § 47A-25, which provides that "damage to or destruction of the building shall be promptly repaired and restored by the manager or board of directors . . . using the proceeds of insurance on the building for that purpose, and unit owners shall be liable for assessment for any deficiency," . . . .

¶ 6 The trial court certified its order as a final judgment pursuant to Rule 54(b) of our Rules of Civil Procedure. Muirfield filed notice of appeal 24 September 2021, and Ms. Hayes noticed a cross-appeal four days later. Muirfield also filed a petition for writ of certiorari on 23 March 2022, and Ms. Hayes filed a motion to dismiss Muirfield's appeal for lack of jurisdiction on 4 April 2022.[2]

¶ 7 On appeal, Muirfield argues the applicable provisions of the Declaration are ambiguous regarding its coverage obligations, creating a genuine issue of fact that could not be resolved by summary judgment. We disagree and affirm.

## II. ANALYSIS

### A. Appellate Jurisdiction

¶ 8 The parties disagree as to whether this Court has jurisdiction to review the trial court's interlocutory order granting partial summary judgment for Ms. Hayes on fewer than all of her claims. An interlocutory order is subject to immediate review

---

[2] Muirfield has moved this Court to dismiss Ms. Hayes's cross-appeal. Ms. Hayes did not respond to that motion and did not file a brief in support of her cross-appeal. As a result, we grant Muirfield's motion to dismiss.

if "the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), . . . [or] if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995) (citations omitted). If an interlocutory appeal does not fall within these two categories, we may nonetheless exercise our discretion to review the appeal on the merits by writ of certiorari pursuant to Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure. *Midsouth Golf, L.L.C. v. Fairfield Harbourside Condo. Ass'n, Inc.*, 187 N.C. App. 22, 26, 652 S.E.2d 378, 382 (2007).

¶ 9        Assuming, *arguendo*, that the trial court's partial summary judgment order was neither properly certified pursuant to Rule 54(b) nor affecting a substantial right, we allow Muirfield's petition for writ of certiorari in our discretion. *See id.* ("[A]ssuming *arguendo* that Plaintiff appeals from a nonappealable interlocutory order, we elect to consider the appeal by granting Plaintiff's conditional petition for writ of certiorari.").

**B. Standard of Review**

¶ 10        We review appeals from summary judgment orders *de novo*, meaning we review the matter anew without restriction by the trial court. *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 257, 794 S.E.2d 785, 791 (2016). The moving

party bears the burden of showing it was entitled to summary judgment as a matter of law and that there is no genuine dispute as to any material fact. *Jenkins v. Stewart & Everett Theatres, Inc.*, 41 N.C. App. 262, 265, 254 S.E.2d 776, 778 (1979); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). We view the evidence in the light most favorable to the non-moving party, giving them the benefit of all reasonable inferences. *Jenkins v. Lake Montonia Club, Inc.*, 125 N.C. App. 102, 104, 479 S.E.2d 259, 261 (1997).

¶ 11        Furthermore, "[i]nterpretation of the language of a restrictive covenant is a question of law reviewed *de novo*." *Erthal v. May*, 223 N.C. App. 373, 378, 736 S.E.2d 514, 517 (2012). "In construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of all the covenants contained in the instrument or instruments creating the restrictions." *Friends of Crooked Creek, L.L.C. v. C.C. Partners, Inc.*, 254 N.C. App. 384, 389, 802 S.E.2d 908, 912 (2017) (citation omitted).

## C. Interpreting the Unambiguous Declaration is a Question of Law

¶ 12        Muirfield argues the Declaration provisions are ambiguous and therefore the trial court erred in granting Ms. Hayes partial summary judgment and concluding Muirfield violated the Declaration and Chapter 47A by failing to procure coverage for 80 percent of the replacement value of Building 5. Specifically, Muirfield contends that the word "building" only refers to the outside structure and not the interior

units.[3] We are not persuaded by these arguments because, when considered in the context of the language in the entire Declaration, we conclude the word "building" is not ambiguous.

¶ 13 Section 47A-24, in relevant part, requires condominium associations to, "if required by the declaration, bylaws or by a majority of the unit owners, . . . obtain insurance for the property against loss or damage by fire and such other hazards under such terms and for such amounts as shall be required or requested." N.C. Gen. Stat. § 47A-24 (2021). Section 47A-25, in turn, states that "damage to or destruction of the building shall be promptly repaired and restored by the manager or board of directors, . . . using the proceeds of insurance for that purpose, and unit owners shall be liable for assessment for any deficiency[.]" N.C. Gen. Stat. § 47A-25 (2021).

¶ 14 Thus, whether Muirfield violated Sections 47A-24 and -25 is determined by whether Muirfield violated the terms of its Declaration.

¶ 15 This Court has previously held that the construction of unambiguous contract

---

[3] Ms. Hayes argues that Muirfield waived its argument that the Declaration was ambiguous because Muirfield did not use the word "ambiguous" at the hearing on Ms. Hayes's motions. At the hearing, however, counsel for the other plaintiffs in the consolidated case conceded, "I think the parties would acknowledge there's some ambiguity . . . ." Additionally, counsel for Muirfield argued that it was not responsible for interior repairs—exactly what it is arguing on appeal. Therefore, Muirfield "raised that specific issue before the trial court to allow it to make a ruling on that issue," and did not "swap horses between courts in order to get a better mount [on appeal]." *Regions Bank v. Baxley Com. Props., L.L.C.*, 206 N.C. App. 293, 298-99, 697 S.E.2d 417, 421 (2010) (citations omitted).

terms, including the terms of a homeowners' association declaration, presents a question of law. *Dep't. of Transp. v. Idol*, 114 N.C. App. 98, 100, 440 S.E.2d 863, 864 (1994); *see also Shearon Farms Townhome Owners Ass'n. II, Inc. v. Shearon Farms Dev., L.L.C.*, 272 N.C. App. 643, 649-51, 847 S.E.2d 229, 234-36 (2020) (observing that a homeowners' association declaration is interpreted "under ordinary contract principles" and applying a declaration's plain language on *de novo* review). A genuine issue of material fact arises only when an ambiguity in a contract's terms requires the factfinder to discern the parties' intent from the evidence. *See Landover Homeowners Ass'n. v. Sanders*, 244 N.C. App. 429, 430, 781 S.E.2d 488, 489 (2015) ("Where ambiguities exist in the language of a [homeowners association] declaration which create an issue of material fact, the trial court erred in granting summary judgment . . . .").

Whether such an ambiguity exists in the first instance is a question of law for this Court on *de novo* review. *Bicket v. McLean Sec., Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996). For the reasons explained below, we hold that no ambiguity exists here.

Section 20 of the Declaration provides:

> (A) The following insurance coverage shall be maintained in full force and effect by the Association covering the operation and management of the Condominium Units and Common Property:

> (1) Casualty insurance covering the building and all improvements upon the land and all personal property subject to this Declaration and any additions added by amendment, except such personal property as may be owned by the Condominium Unit Owners, shall be procured in an amount equal to the maximum insurable replacement value thereof (exclusive of excavation, foundations, streets and parking facilities) as determined annually by the insurance company affording such coverage; and provided that such policies may be written on a co-insurance basis of not less than eighty percent (80%). . . . Such coverage shall afford protection against: (a) loss or damage by fire or other hazards covered by the standard extended coverage endorsement . . . .

Section 21 of the Declaration states who has responsibility for repairs in the event of a casualty, including a total destruction of the building:

> (A)  If any part of the Common Areas and Facilities shall be damaged by casualty, the determination of whether or not to reconstruct or repair it shall be made as follows:
>
> > . . . .
> >
> > (2)  Total destruction shall be destruction of more than two-thirds (2/3) of the building.  In the event of total destruction, the Common Areas and Facilities shall not be reconstructed or repaired if . . . Condominium Unit Owners who own three-fourths (3/4) or more of the building vote against reconstruction or repair.
> >
> > (3)  Any such reconstruction or repair shall be substantially in accordance with the plans and specifications contained herein.
>
> (B)  If the damage is only to those parts of one or more Condominium Units for which the responsibility for maintenance and repair is that of the Unit Owner, then the

Condominium Unit Owner shall be responsible for reconstruction and repair after casualty. In all other instances, the responsibility of reconstruction and repair after casualty shall be that of the Association as follows:

> (1) Immediately after the casualty causing damage to property for which the Association has the responsibility for maintenance and repair, the Association shall obtain reliable and detailed estimates of the cost to place the damaged property in condition as good as that before the casualty. Such costs may include professional fees and premiums for such bonds as the Boards of Directors deem appropriate.

> (2) When the damage is to both the Common Areas and Facilities and Condominium Units, the insurance proceeds shall be applied first to the costs of repairing the Common Areas and Facilities and the balance to the Condominium Units.

Section 4 of the Declaration provides the following description of the term "units":

> Each unit shall include all the space within the boundaries thereof. . . . It is the intent that each unit will include all interior drywall, panelling [sic] and molding and any surface finish, or wallpaper, and all finished flooring, such as exposed wooden flooring, vinyl or linoleum floor covering, matting and carpeting, but will not include studs, supports and wall insulation, concrete slabs, floor or ceiling joists. Each unit shall be deemed to include the interior and exterior of any and all doors, windows, sliding glass doors and other closures. . . . Included also as part of a unit are the following: (a) the heating and air conditioning systems serving the unit . . . (b) all electrical switches, electrical outlets and light fixtures . . . (c) the electrical wiring and service system . . . (d) the plumbing for water service . . . and (e) the drainage or sewer plumbing . . . .

¶ 20    Section 20(A) of the Declaration provides that the insurance will cover both *"the Condominium Units* and Common Property." (Emphasis added). Moreover, the casualty insurance required by Section 20(A)(1) is to cover the "building" and only excepts "such personal property as may be owned by the Condominium Unit Owners[.]" The word "building" is in a subsection that mandates insurance coverage for "Condominium Units," disclosing that the building includes such units, which aligns with the definition of "building" as "containing" units.[4]

¶ 21    Muirfield does not contest that it failed to procure coverage for 80 percent of the estimated cost of replacing both the interior and exterior of the building. We reject Muirfield's argument that the coverage requirement applied only to the exterior building structures.

¶ 22    As stated above, the Declaration excludes only "personal property" from the coverage requirement. Since the Declaration defines what the "unit" includes in Section 4, the "personal property" of the unit owner referenced in Section 20(A)(1) must refer to everything else in the unit. Therefore, Muirfield is required to maintain

---

[4] We find *Craig v. Sandy Creek Condo. Ass'n, Inc.*, No. COA08-1048, 2009 WL 1663950 (N.C. Ct. App. June 16, 2009) (unpublished), persuasive on this matter. The court in *Craig* reasoned that Section 47A-24's mandate that the board "obtain insurance for the property," combined with the definitions of "property," "building," and "unit" in Chapter 47A, meant "pursuant to Article 1, Chapter 47A, 'property' includes the 'units' which are housed inside the 'buildings.'" *Id.* at *3-4.

insurance to cover those items that the Declaration mentions as being part of the "unit," none of which is excepted by Section 20(A)(1) as "personal property."

¶ 23    Muirfield also argues that Section 21 of the Declaration, which defines who is responsible for repair in the case of a casualty, means that it is not responsible for repairing the interior of Building 5 because unit owners must repair and replace damage to their units.  Section 21(B) of the Declaration provides:

> If the damage is only to those parts of one or more Condominium Units for which the responsibility for maintenance and repair is that of the Unit Owner, then the Condominium Unit Owner shall be responsible for reconstruction and repair after casualty. *In all other instances, the responsibility of reconstruction and repair after casualty shall be that of the Association as follows*:
>
> . . . .
>
> > (2) When the damage is to both Common Areas and Facilities *and Condominium Units*, the insurance proceeds shall be applied first to the costs of repairing the Common Areas and Facilities *and the balance to the Condominium Units.*

(Emphasis added).

¶ 24    Muirfield contends that, because unit owners typically have the responsibility of repairing and replacing things that are defined as part of the "unit," the unit owners also have the responsibility to replace those things in the event of "total destruction."  This argument conflicts with provisions in the Declaration requiring

the Association to repair and replace damage to more than the just a unit, such as when there is a "total destruction" of the building.

¶ 25     Muirfield next argues that because unit owners can obtain their own insurance, and Section 21 mandates the Association's insurance proceeds be applied first to the common areas, that Muirfield is not responsible for insuring the interior units. This argument also fails.

¶ 26     The Declaration provides that unit owners are responsible in the event of unit-only damage. In the event of "total destruction," however, the coverage responsibility shifts to Muirfield. A unit owner's ability to obtain insurance coverage for the interior does not negate the Association's coverage obligations. The applicable provisions simply specify the priority order for the Association to make repairs: first to the Common Areas and then to the units.

¶ 27     Accordingly, we hold that by the express terms of the Declaration, Muirfield was required to procure insurance sufficient to cover 80 percent of the "building," including the interior upfits of the individual units. And, because the Declaration required said insurance, the plain language of Sections 47A-24 and -25 compelled the Association to insure and apply insurance proceeds to the building structure and the units. Therefore, the trial court did not err in granting Ms. Hayes's motion for partial summary judgment as to these issues.

### III.    CONCLUSION

For the foregoing reasons, we affirm the trial court's order.

MOTION TO DISMISS APPEAL GRANTED; MOTION TO DISMISS CROSS-APPEAL GRANTED; PETITION FOR WRIT OF CERTIORARI ALLOWED; AFFIRMED.

Judges HAMPSON and GRIFFIN concur.